IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

MATTHEW MOORE                                                                    PLAINTIFF

v.                                    4:25-cv-00417-DPM-JJV

FRANK BISIGNANO,
Commissioner,
Social Security Administration                                                   DEFENDANT

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION**

**INSTRUCTIONS**

This recommended disposition has been submitted to United States District Judge D.P. Marshall Jr.  The parties may file specific objections to these findings and recommendations and must provide the factual or legal basis for each objection.  The objections must be filed with the Clerk no later than fourteen (14) days from the date of the findings and recommendations.  A copy must be served on the opposing party.  The district judge, even in the absence of objections, may reject these proposed findings and recommendations in whole or in part.

**RECOMMENDED DISPOSITION**

Plaintiff, Matthew Moore, has appealed the final decision of the Commissioner of the Social Security Administration to deny his claim for a period of disability and disability insurance benefits. The Administrative Law Judge (ALJ) concluded that Plaintiff had not been under a disability within the meaning of the Social Security Act, because jobs existed in significant numbers he could perform despite his impairments. (Tr. 17-30.)

This review function is extremely limited.  A court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and to analyze whether Plaintiff was denied benefits due to legal error.  *Long v. Chater*, 108 F.3d

185, 187 (8th Cir. 1997); *see also*, 42 U.S.C. § 405(g).  Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Reynolds v. Chater*, 82 F.3d 254, 257 (8th Cir. 1996).

In assessing the substantiality of the evidence, courts must consider evidence that detracts from the Commissioner's decision as well as evidence that supports it; a court may not, however, reverse the Commissioner's decision merely because substantial evidence would have supported an opposite decision.  *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993).

The history of the administrative proceedings and the statement of facts relevant to this decision are contained in the respective briefs and are not in serious dispute.  Therefore, they will not be repeated in this opinion except as necessary.  After careful review of the pleadings and evidence in this case, I find the Commissioner's decision is supported by substantial evidence and Plaintiff's Complaint should be DISMISSED.

Plaintiff is young – only forty-seven years old. (Tr. 29.) He is a high school graduate and has an associate's degree. (Tr. 29, 896.) Mr. Moore also has a solid work history. (Tr. 340-347.) He served in the Army during the Gulf War and has worked as a groundskeeper and a mechanic. (Tr. 28, 316.)

The ALJ[1] found Mr. Moore has not engaged in substantial gainful activity since December 31, 2021 – the alleged onset date.  (Tr. 19.)  He has "severe" impairments in the form of

---

[1] The ALJ followed the required sequential analysis to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; and (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy.  20 C.F.R. §§ 416.920(a)-(g) and 404.1520(a)-(g).

"degenerative disc disease, degenerative joint disease, depression, anxiety, and post-traumatic stress disorder." (Tr. 20.) The ALJ further found Mr. Moore did not "have an impairment or combination of impairments that meets or medically equals the severity of one of the listed in 20 C.F.R. Part 404, Subpart P, Appendix 1."[2] (Tr. 20-22.)

The ALJ determined Mr. Moore had the residual functional capacity (RFC) to perform a reduced range of sedentary work as defined in 20 C.F.R. 404.1567(a). (Tr. 22.) Specifically, the ALJ found he can perform "simple, routine, and repetitive tasks, make simple, work-related decisions, have occasional interactions with co-workers, supervisors, and the public, and adapt to simple or routine changes where such changes are few and infrequent." *Id.* Based on this RFC assessment, the ALJ concluded Mr. Moore could no longer perform his past work. (Tr. 28-29.) He, therefore, utilized the services of a vocational expert to determine if jobs existed in significant numbers that Plaintiff could perform despite his impairments. (Tr. 64-67.) Based in part on the testimony of the vocational expert, the ALJ determined Plaintiff could perform the sedentary jobs of label pinker, para mutual ticket checker, and table worker. (Tr. 29.) Accordingly, the ALJ determined Mr. Moore was not disabled. (Tr. 30.)

The Appeals Council received additional information and then denied Plaintiff's request for a review of the ALJ's decision, making his decision the final decision of the Commissioner. (Tr. 1-5.) Plaintiff filed the instant Complaint initiating this appeal. (Doc. No. 2.)

In support of his Complaint, Mr. Moore argues that the ALJ's conclusion he can perform the jobs of label pinker, para mutual ticket checker, and table worker is inconsistent with his RFC assessment and the findings of two State agency psychological consultants that the ALJ found to be credible. (Doc. 10 at 3-15.) Specifically, Plaintiff says:

---

[2] 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526.

> As demonstrated, the ALJ understood that Drs. Janssen and Podkova restricted Moore, in part, to interpersonal contact that is incidental to the work performed, such as assembly work. (Tr. at 26-27, 71, 83.) The ALJ credited the agency physicians' opinions in this regard but then failed to incorporate the incidental interpersonal contact restriction into the RFC. (Tr. at 22, 26- 27.) Instead, the ALJ restricted Plaintiff to quantity-based limitations of occasional interaction with coworkers, supervisors, and the public, while the agency physicians limited Plaintiff to a quality-based restriction regarding all interpersonal contact. Why the ALJ modified this social restriction is unknown as the ALJ provided no explanation for substituting inherently different types of interaction restrictions as part of the RFC.

(*Id.* at 4.)

The Commissioner responds that, while the ALJ did not "fully adopt or adopt verbatim Dr. Janssen's and Podkova's findings," he did find them "persuasive to the extent supported by explanation or consistent with the evidence." (Doc. No. 12 at 7.) The ALJ found that:

> These opinions are persuasive to the extent they are supported by detailed explanation and consistent with the totality of the objective medical evidence contained in the record, as well as the regular activities the claimant acknowledge performing. As for supportability, the State agency psychological consultants are experienced in evaluating Social Security disability claims and they cited objective medical and other evidence in support of their opinions (Exhibit 1A, p. 4; Exhibit 4A, p. 4). As for consistency, their opinions are generally consistent with the record, which shows treatment for depression, anxiety, and post-traumatic stress disorder with complaints of insomnia, for which the claimant was given medication and supportive psychotherapy, but on exam, the claimant was routinely cooperative, alert and or oriented, with linear and goal-directed thought process, intact memory, and adequate fund of knowledge (Exhibit 11F, p. 15; Exhibit 13F, pp. 3, 10, 14, 28, 43, 53.) Accordingly, the claimant is capable of simple, routine, and repetitive tasks and as described in the residual functional capacity.

(Tr. 27.)

After careful review of Plaintiff's argument, I find it to be without merit. As the Commissioner correctly states, the ALJ is not required to adopt verbatim the findings that he finds persuasive and that "[a]s long as substantial evidence in the record as whole supports it, the reviewing court should uphold the ALJ's RFC finding." (Doc. No. 12 at 8.) *citing Wyatt v. Kijakazi,* No. 23-1559, 2023 WL 6629761, at * 1 (8th Cir. Oct. 12, 2023).

4

As to Plaintiff's argument regarding the restriction to "rote" work, Defendant responds that the ALJ "properly accounted for Dr. Podkova's finding about learning by rote by restricting Plaintiff to simple, routine, and repetitive tasks." (Doc. No. 12 at 11.) The Commissioner cites to the Merriam-Webster Dictionary which defines "rote" tasks are those learned by "use of memory usually with little intelligence" or "mechanical or unthinking routine or repetition." *See* Merriam-Webster.com, https://www.merriam-webster.com/dictionary/rote (last visited Oct. 30, 2025). I find the Commissioner's argument to be persuasive.

With specific regard to Step 5 and the job of label pinker, the Dictionary of Occupational Titles ("DOT") defines the job as:

> "Tends machine equipped with pinking attachment that cuts strips of labeling material into individual labels: Positions roll of material on holder and inserts end in feeding mechanism. Turns dial to set counter for specified number of labels to be cut. Starts machine and observes cut labels to detect cutting defects. Removes defective labels and notifies machine fixer to adjust machine. Packs specified numbers of labels in box. May tend machine that cuts labels without pinking and be designated Label Cutter (narrow fabrics)."

(*DOT* 585.685-062).

The DOT assigns a Specific Vocational Preparation ("SVP") Level Two to this job. Level Two is defined as "[a]nything beyond short demonstration up to and including one month." Additionally, the DOT has six Reasoning Levels, and the level assigned to the job of label pinker is Level Two. Level Two states: "[a]pply common sense understanding to carry out detailed but uninvolved written or oral instructions. Deal with problems involving a few concrete variables in or from standardized situations." Dictionary of Occupational Titles Appendix; Components of the Definitional Trailer. Taking all this together, I agree with the Commissioner that "learning by rote, by its very definition, relies on mechanical or unthinking routine or repetition, which in everyday parlance would include learning by repetitively performing the tasks at issue …." (Doc. No. 12 at 11.)

5

The same is true for the job of para mutual ticket checker. So, on this record, given the ALJ's conclusion that Plaintiff is "capable of simple, routine, and repetitive tasks and as described in the residual functional capacity," I find the ALJ could rightly conclude Plaintiff can perform the jobs of label pinker and para mutual ticket taker.

Plaintiff also argues that the job of table worker does not exist in sufficient numbers. (Doc. No. 10 at 13.) The Commissioner appears to concede this point because it is not addressed in his brief. However, because the jobs of label pinker and para mutual ticket checker identified by the vocational expert do exist in sufficient numbers, this argument, while likely meritorious, has no impact on my decision.

Next, Plaintiff argues, "The ALJ erred by finding the RFC without explanation as required by SSR 96-8p. The ALJ determined Plaintiff was capable of work in a manner inconsistent with the Commissioner's own policy directed by SSR 96-8p." (Doc. No. 10 at 15.) Plaintiff goes on to say:

> The record demonstrates the ALJ disregarded the Commissioner's own policy and failed to explain why the RFC failed to include the entirety of mental restrictions established by the agency physicians, while actually crediting these same physicians. The ALJ offered no reason to reject the findings reached by Drs. Janssen and Podkova, and the ALJ's conclusions regarding the mental RFC disregarded the directive of SSR 96-8p.

(*Id.* at 16.)

But as the Commissioner correctly responds, the ALJ has no obligation to discuss every possible functional limitation. (Doc. No. 12 at 14-15.) "[A]n ALJ is not required to discuss every piece of evidence submitted" and "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir.1998). I find no error here.

6

Mr. Moore clearly suffers from some degree of physical and mental limitations from the combination of his impairments. But given this limited review under the law, my careful review of the ALJ's opinion, the medical record, and the briefs from the respective parties, I find that the ALJ's opinion is supported by substantial evidence.

Mr. Moore's medical records simply fail to support an allegation of complete disability. Diagnostic imagining of Plaintiff's back showed "[t]he combination of retrolisthesis at L5/S1 and disc bulge results in narrowing of the bilateral subarticular zones and contact upon the descending left S1 nerve route. Correlate for radiculopathy. L3/L4 through L5/S1 facet arthropathy." (Tr. 596.) Imaging on Plaintiff's left and right knee showed "[n]o significant bony abnormality" and a "normal knee." (Tr. 597-98.) Plaintiff's other diagnostic testing showed relatively normal results with little to no changes. (Tr. 598-601, 1194-1195.) Plaintiff's doctors treated his pain using physical therapy and medication to which Mr. Moore responded well. (Tr. 728-738, 744-746, 749-755.) And Darrin Campo, M.D., William Harrisson, M.D., Christal Janssen, Ph.D., and Margret Podkova, Ph.D., all provide additional support for the ALJ's determination that Plaintiff is not disabled. (Tr. 68-71, 80-88.) Realizing these doctors did not treat or examine Plaintiff, there is simply no basis to find fault in their opinions. The medical records support their conclusions.

I recognize Plaintiff was examined by APRN, Amanda Johnson, on September 15, 2025, who stated Plaintiff was significantly limited. (Tr. 1236-1238.) According to the ALJ, Nurse Johnson "completed a form that reads claimant had back pain, knee pain, bilateral foot pain, plantar fasciitis, degenerative disc disease with radiopathy and posttraumatic arthritis …" *Id.* But the ALJ found her opinion to be unpersuasive because it was a "checklist-style form [that] appears to have been completed as an accommodation to the claimant and includes only conclusions regarding functional limitations without detailed support or rationale for those conclusions." (Tr. 28)

7

Additionally, the ALJ found Nurse Johnson's opinion was inconsistent with the record "which shows no clubbing, cyanosis, or edema to the extremities, intact cranial nerves, full muscle strength and intact sensation to the extremities, and no gross musculoskeletal deformities or crepitus." *Id.* After careful review, I find no reversible error here.

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (emphasis added). A "physical or mental impairment . . . results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). Here, the ALJ could rightly determine that Mr. Moore was not disabled.

The ALJ carefully considered the record and made a supported determination that Plaintiff could perform a limited range of sedentary work. In coming to this conclusion, the ALJ considered the medical records and the opinions from medical professionals. And, while not perfect, his opinion fairly sets out the rationale for his conclusions.

Plaintiff had the burden of proving his disability. *E.g., Sykes v. Bowen*, 854 F.2d 284, 285 (8th Cir. 1988). Thus, he bore the responsibility of presenting the strongest case possible. *Thomas v. Sullivan*, 928 F.2d 255, 260 (8th Cir. 1991). Plaintiff has simply not met that burden. The record contains ample support that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also, Robertson v. Sullivan*, 925 F.2d 1124, 1126-27 (8th Cir. 1991).

Mr. Moore's counsel has done an admirable job advocating for him. But it is not the task of a court to review the evidence and make an independent decision. Neither is it to reverse the

decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence on the record which supports the decision of the ALJ. *E.g., Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996); *Pratt v. Sullivan*, 956 F.2d 830, 833 (8th Cir. 1992).

I have reviewed the entire record, including the briefs, the ALJ's decision, the transcript of the hearing, and the medical and other evidence. There is ample evidence on the record as a whole that "a reasonable mind might accept as adequate to support [the] conclusion" of the ALJ in this case. *Richardson v. Perales*, 402 U.S. at 401; *see also Reutter ex rel. Reutter v. Barnhart*, 372 F.3d 946, 950 (8th Cir. 2004). The Commissioner's decision is not based on legal error.

IT IS, THEREFORE, RECOMMENDED that the final decision of the Commissioner be affirmed, and that Plaintiff's Complaint be dismissed with prejudice.

DATED this 17th day of November 2025.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE